Dear Mr. Durbin:
You have requested an opinion of the Attorney General, in your capacity as Legal Counsel for Fire Protection District No. 4 of Livingston Parish (District 4). You state that District 4 is a large Fire Protection District in Livingston Parish (Parish), encompassing approximately three quarters of the western half of the Parish. Fire Protection District No. 5 of Livingston Parish (District 5) is a smaller district surrounding the City of Denham Springs, and completely bounded on the east, north and south by District 4.
District 5 has requested the Parish Council (Council) to increase its size by taking a portion of the area currently included in District 4. District 4 opposes the request.
You further state that District 4 is currently levying an advalorem tax for maintenance, and a $32.00 annual service charge on property and structures located within the District. In addition, the Louisiana State Bond Commission (Commission) approved, and District 4 issued, $750,000 in Excess Revenue Certificates of Indebtedness (Certificates) for the purpose of acquiring five additional fire trucks, said indebtedness to be paid out of excess revenues, including those derived from the service charge.
You specifically ask whether the Council is authorized to increase the size of District 5 by reducing the area contained in District 4.
In answer to your question, we refer you to Article VII, Section19 of the 1974 Louisiana Constitution which provides:
 "Section 19. Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law, may create or authorize the creation of special districts, boards, agencies, commissions and authorities of every type, define their powers and grant to the special districts, boards, agencies, commissions and authorities so created such rights, powers and authorities as it deems proper, including, but not limited to the power of taxation and the power to incur debt and to issue bonds."
The statutory provisions relating to the creation of fire protection districts are found at R.S. 40:1491, et seq. Section 1492 provides, in pertinent part, the following:
 "A. Parish governing authorities may create or enlarge fire protection districts in the manner and subject to the limitations and restrictions contained in this Part."
Section 1493 further provides, in pertinent part, the following:
 "A. No Fire Protection District shall be created, enlarged or redistricted under this Part until the notice prescribed in this Section has been given."
This Section continues by requiring the Parish to pass a resolution of a notice of its intention to redistrict the fire protection district(s) in question. The notice must be published not less than fifteen (15) days before a public hearing is held on the issue of redistricting.
As can be gleaned from the above, ample authority exists for the Parish to redistrict Districts 4 and 5, provided the proper notice of intent is passed and published. See also Attorney General Opinion No. 96-107. The issue that remains is what effect this redistricting will have on the integrity of the outstanding obligations of District 4.
Initially, we note that the factual scenario giving rise to your request is distinguishable from that discussed in Opinion No. 96-107. In that opinion, the issue before us was the consolidation of three fire protection districts into one single district. Therein, we concluded that the taxes and service charges imposed in each of the former districts should remain in effect and continue to be collected and used within the geographical area of each former district.
In the matter now before us, the proposed redistricting will result in the diminution of the area contained in District 4 which will result in a decrease in revenues derived from the 10.06 mill maintenance tax and the $32.00 service fee. Thus, the question arises as to whether the act of redistricting, thereby reducing the area contained within District 4, constitutes an impairment of contract with regard to the Certificates secured by the revenues derived from the service charge, and issued under the assumption that the maintenance millage and service charge would continue to be imposed and collected.
Both Louisiana and United States Constitutions contain clauses that prohibit the enactment of a law which impairs the obligations of contracts. Article I, Section 23 and Article I, Section 10, respectively. Standards of unconstitutional impairment under the two constitutional clauses are the same because Louisiana law follows the balancing test set forth in U.S. Supreme Court cases. See Board of Commissioners of theOrleans Levee District v. Department of Natural Resources,496 So.2d 281 (La. 1981).
The leading case on bondholder contract clause jurisprudence isUnited States Trust v. State of New Jersey, 97 S.Ct 1505 (1977). This case involved a suit brought by the trustee of revenue bondholders of New York/New Jersey Port Authority bonds against the state of New Jersey, contending that the state's repeal of a covenant written into the bond contract that revenues of the Authority would never be used to subsidize mass transit violated the bondholders contract rights. The value of the covenant to the bondholders was disputed. The dissenting judges and lower courts found that the repeal constituted "a minimal interference with the realistic economic interest of the bondholders", Id. at 1529 (Brennan, J. dissenting), and "a relatively inconsequential infringement of contract rights in the pursuit of substantial and important public ends." Id.
However, the majority of the Court waived aside any inquiry into the value of the impairment and focused its attention instead on the state's abrogation of its pledge. The Court noted that New Jersey had agreed to the covenant intending to induce bondholders to enter into a contractual relationship. In selling the bonds, the issuing "[s]tates received the benefit they bargained for: public marketability of Port Authority bonds. . . ." Id., at 1516. The latter repeal and unilateral breach of contract obligations without providing compensation, destroyed the vested rights of the bondholders and therefore was a constitutional "taking", Id. at 1516, n. 16. Thus, regardless of its value, the Court concluded that the state's abrogation of a contract pledge, without compensation, constituted a substantial impairment of "constitutional dimension". This finding invoked the Court's contract clause scrutiny.
A finding of an "impairment" is not dispositive of a contract clause violation because the states have some flexibility in breaking their obligations under limited circumstances. To determine when a contract clause violation has occurred, the Supreme Court fashioned a three-part test. First, the Court must find that an impairment of a contract has occurred. Second, the Court must identify the state interest in breaking its obligations. Third, this interest must be weighed to determine whether the contractual violation was reasonable under the circumstances.
In the matter before us, the voters residing within District 4 approved, in addition to the maintenance millage, the imposition of an annual service charge of $32.00 on each structure within the District for ten years from the period of January 1, 1997 to December 31, 2006. On May 16, 1997, District 4 executed the Certificates which were secured by the excess of annual revenues generated from the service charge for each of fiscal years January 1, 1997-December 31, 2006.
The annual service charge was, and is, essential to the enhanced marketability and integrity of the Certificates. A decrease in the area contained in District 4 by redistricting would diminish the revenues pledged to secure the Certificates, thereby impairing the Certificate holders' rights to these revenues. It is our opinion that, by taking these rights, such redistricting would create an impairment of "constitutional dimension".
We have been presented with no compelling interest to justify such a violation. There is no indication whatsoever that the lives, health, morals, comfort and/or general welfare of the residents of District 4 will be adversely affected if the redistricting does not occur. To the contrary, District 4 has five new Class A 1500 GPM pumper fire trucks to serve its constituents.
Based upon the foregoing, it is the opinion of this office that a redistricting of District 4 so as to diminish its size, resulting in a material diminution of its revenues, would be a substantial impairment of the contractual arrangements with the Certificate holders. It is further the opinion of this office that such an impairment could be found by a court of law to be in violation of the Contract Clauses of the Louisiana and United States Constitutions.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla